**In re Henry LAMPI and Phyllis Lampi, Debtors.**

**Henry LAMPI and Phyllis Lampi, Appellants–Defendants,**

v.

**HUNDMAN LUMBER MART CO., INC., Appellee–Plaintiff.**

No. 93–3018.

United States District Court, C.D. Illinois, Springfield Division.

April 5, 1993.

Lars Eric Ostling, Bloomington, IL, for appellee-plaintiff.

William T. Hundman, Bloomington, IL, for appellants-defendants.

## OPINION

RICHARD MILLS, District Judge:

Question: the meaning of "willful and malicious" within 11 U.S.C. § 523(a)(6).

Disposition: the bankruptcy court is affirmed.

### I. Facts

Defendant Henry Lampi was a general contractor and his wife Jean performed various duties for his business. Defendants bought materials totaling $18,296.45 from Hundman Lumber Co. (Hundman) for the construction of a single family residence. A buyer for the residence was found and the sale was to close on December 11, 1989. Because a lien waiver from Hundman would be necessary to close the deal, Defendants issued a check for $18,296.45 to Hundman, post dated to December 14, 1989, and Hundman tendered its mechanics lien waiver. At the time the check was issued, Defendants knew that there were insufficient funds to cover the check, but thought that the closing on December 11th would provide them with enough money to cover the check on the 14th.

Problems arose during the December 11th closing causing the date to be pushed back to the 14th. However, according to the closing officer, it became obvious at this time that there would be insufficient proceeds from the sale to pay all of the expenses and liens which attached to the property. Nevertheless, at the December

14th closing, Defendants brought Hundman's lien waiver with them, but did not divulge that it had not been paid. As a result, Hundman lost its lien on the property which would have been superior to the mortgage and would have been paid first in any suit to foreclose that mortgage.

Defendants made payments to Hundman shortly after the December 14th closing. Hundman brought suit against Defendants in state court for the remainder and received a judgment against them in the amount of $10,718.11. Currently, a balance of a $9,718.11 is owed to Hundman.

Hundman filed a complaint in bankruptcy court seeking to have this debt declared nondischargeable. On October 20, 1992, the bankruptcy court determined that the balance owed Hundman was not dischargeable pursuant to 11 U.S.C. § 523(a)(6) and that Mrs. Lampi was jointly liable with her husband. On October 27, 1992, Defendants filed their appeal.

## II. Analysis

A reviewing court must accept the bankruptcy judge's findings of fact unless clearly erroneous and conclusions of law are reviewed de novo. *In re Ebbler Furniture & Appliances, Inc.*, 804 F.2d 87 (7th Cir. 1986). Defendants contend that the issuance of an insufficient fund check is not conduct which invokes the provisions of § 523(a)(6), in light of the parties past dealings. Also, Defendants assert that the bankruptcy court erred in refusing to consider their attempts to cure and make payments to Hundman as mitigation of their intent to defraud.

█ In this case, the bankruptcy court found that Defendants acted willfully and maliciously because they knew at the time that they tendered the lien waiver that Hundman's debt would not be paid and that it would lose its lien priority to collect that debt. Based on the record, this Court cannot find that the bankruptcy court's factual findings were clearly erroneous.

█ Nor can the Court conclude that the bankruptcy court incorrectly applied the law. Section 523(a)(6) does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" In order to establish a case under § 523(a)(6), the complainant must prove three elements: "1) a willful and malicious act; 2) done without cause or excuse; 3) that leads to harm." *In re Cerar*, 84 B.R. 524 (Bkrtcy.C.D.Ill.1988), *aff'd*, 97 B.R. 447 (C.D.Ill.1989). The term "willful" means deliberate or intentional and the term "malicious" means an act done deliberately, knowingly, and without just cause or excuse. *In re Cerar*, 84 B.R. at 530; *In re Iaquinta*, 98 B.R. 919, 924 (Bkrtcy.N.D.Ill.1989). The debtor need not act with ill will or malevolent purpose toward the injured party. *In re Iaquinta*, 98 B.R. at 924. Where a creditor is deprived of its collateral by an act of the debtor, that act is deemed both willful and malicious. *In re Iaquinta*, 98 B.R. at 925.

The Seventh Circuit has not yet definitively spoken to the meaning of "malicious" within § 523(a)(6). *See In re Scarlata*, 979 F.2d 521, 526 (7th Cir.1992). But, in *In re Thomas*, 729 F.2d 502 (7th Cir. 1984), it discussed the possible application of § 523(a)(6) to a situation where a subcontractor did not pay the suppliers for work performed on a construction project. The court noted that the subcontractor knew that its acts would result in the contractor's surety having to pay its suppliers and finish the work; consequently, the Seventh Circuit concluded that "§ 523(a)(6) might well be applicable." *In re Thomas*, 729 F.2d at 506. However, since the court found that § 523(a)(4) was dispositive, it did not determine the applicability of § 523(a)(6). Nevertheless, the dicta indicates that if the debtors know their conduct may cause financial injury, then they acted maliciously. Moreover, as noted by the dissenting opinion in *In re Scarlata*, the substantial weight of authority supports this construction of the term "malicious" within § 523(a)(6). *In re Scarlata*, 979 F.2d at 539.

In the case at bench, it is clear that Defendants knew that their act of tendering Hundman's lien waiver without first satisfying its debt would cause financial

injury. Defendants knew that Hundman would lose its lien—and consequently—its priority position in receiving satisfaction of its debt. This case is analogous to the situation presented in *In re Iaquinta* where the creditor was deprived of its collateral by an act of the debtor. Consequently, the Court finds that the bankruptcy court did not err when it concluded that Defendants acted willfully and maliciously.

Defendants also contend that they did not act willfully or maliciously as evidenced by the payments made to Hundman in partial satisfaction of their debt. *See In re Pokrandt,* 54 B.R. 691 (Bkrtcy.W.D.Wis. 1985). In *Pokrandt,* the court refused to infer that the debtors acted fraudulently when they knowingly issued insufficient fund checks since they may well have intended to make the checks good at a later date. The Court finds *Pokrandt* inapplicable to the case at bar. Here, Defendants did not merely tender an insufficient fund check; rather they engaged in a deliberate act which deprived Hundman of its lien and priority position in receiving satisfaction of its debt. *See In re Condict,* 71 B.R. 485, 488 (N.D.Ill.1987).

Accordingly, the Court finds that pursuant to § 523(a)(6), the debt to Hundman is not dischargeable and that Mrs. Lampi is jointly liable since the record indicates that she knew that Hundman's lien waiver was being tendered without having sufficient funds to pay the check issued to it.

*Ergo,* the decision of the bankruptcy court is AFFIRMED.

Case closed.