**In re James Timothy HALL and Carrie Lynn Hall.**

**Reggie Jones, Plaintiff,**

**v.**

**James Timothy Hall and Carrie Lynn Hall, Defendants.**

**Bankruptcy No. 6:02–bk–70062M. Adversary No. 6:02–ap–7090.**

United States Bankruptcy Court, W.D. Arkansas, Hot Springs Division.

July 24, 2003.

David A. Grace, Hardin & Grace, P.A., Little Rock, AR, for Debtors.

Frederick S. Wetzel, III, Little Rock, AR, U.S. Trustee.

## ORDER

JAMES G. MIXON, Chief Judge.

Now before the Court is a motion filed pursuant to Federal Rule of Bankruptcy Procedure 7012(b) by the Defendants (hereinafter "Hall"), who are debtors in a chapter 7 bankruptcy case. Hall's motion requests dismissal of the amended complaint filed by the Plaintiff (hereinafter "Jones"). The amended complaint seeks to deny the dischargeability of a contingent debt owed by Hall. The complaint alleges that the debt at issue is the result of Hall's willful and malicious injury to the property of another and, thus, should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

The relevant factual allegations are set out in the amended complaint. Jones and two partners owned and operated a Chevrolet and GMC truck dealership in Pike County, Arkansas. In 1998, Jones acquired the interest of his two partners in the dealership. The complaint alleges that, thereafter, the dealership was placed in a corporation belonging exclusively to Jones and known as Reggie Jones Chevrolet and GMC Truck, Inc. ("Reggie Jones, Inc.").

Hall owned a Chrysler dealership in Pike County, Arkansas. In 1998, Jones and Hall acquired a Ford dealership in Pike County, Arkansas, which was placed in a corporation known as J & H Auto, Inc. ("J & H, Inc."). Jones and Hall each held a 50 percent interest in the corporation.

In August 1999, the acquisition of the Ford dealership by J & H, Inc. was completed. As part of the transaction, Ford Motor Credit Company created a $700,000.00 line of credit to facilitate the wholesale purchase of new vehicles by J & H, Inc. In 1999, Jones agreed to sell his 50% interest in J & H, Inc. to Hall and also to sell his interest in Reggie Jones, Inc., to Hall or to an entity owned by Hall.

The parties agreed that Hall (acting through Hall Auto, Inc.) would acquire Jones' stock in J & H, Inc., and that Glenwood Auto Group, Inc. (owned by Hall) would acquire the assets of Reggie Jones, Inc. As part of the sale of stock from J & H, Inc. to Hall Auto, Inc., Hall agreed to indemnify Jones and hold Jones harmless from any claim against J & H, Inc. that might result from Hall's operation of the business.

An automotive wholesale agreement between J & H, Inc. and Ford Motor Credit provided for a line of credit and granted Ford Motor Credit a security interest in all vehicles purchased by J & H, Inc. for resale. The agreement also provided that upon the sale of any vehicles in the ordinary course of business the sale proceeds were to be held in trust for Ford Motor Credit and be accounted for and remitted to Ford Motor Credit forthwith.

In connection with the transaction, Jones and Hall executed a guaranty in favor of Ford Motor Credit guaranteeing the performance of J & H, Inc. on the line of credit agreement previously referred to herein. Thereafter, J & H, Inc. was operated at the direction of Hall.

In 2001, J & H, Inc. terminated operation of the dealership and resigned the franchise with Ford Motor Company. Thereafter, Ford Motor Credit liquidated the assets of J & H, Inc. and has demanded payment of a deficiency of $788,128.33. The deficiency allegedly resulted when J & H, Inc. sold vehicles but failed to remit the sale proceeds to Ford Motor Credit. Ford Motor Credit has also made demand on Jones for payment pursuant to Jones' guaranty in the event J & H, Inc. and Hall failed to pay Ford Motor Credit.

The amended complaint alleges that the facts outlined above constitute grounds to deny the dischargeability of Hall's contingent debt pursuant to the provisions of 11 U.S.C. § 523(a)(6) because the debt arises from a willful and malicious injury to the property of another. The complaint also states that Jones has or had a property interest in the collateral securing the credit line and in the proceeds from the sale of the collateral to the extent that Ford Motor Credit has a claim for unpaid proceeds from the sale of the collateral.

### DISCUSSION

Federal Rule of Bankruptcy Procedure 7012 incorporates Federal Rule of Civil Procedure 12(b)-(h). Applicable in adversary proceedings, Federal Rule of Civil Procedure 12(b) provides the following:

"The following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted...." Fed.R.Civ.P. 12(b)(6).

For purposes of ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b), the factual allegations in the complaint are assumed to be true and are construed in the light most favorable to the plaintiff. *St. Croix Waterway Ass'n. v. Meyer*, 178 F.3d 515, 519 (8th Cir.1999); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990).

A motion to dismiss for failure to state a claim upon which relief may be granted is not generally favored and will be granted only if the complaint fails to allege facts which would entitle the pleader to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990)(quoting *Conley*, 355 at 45–46, 78 S.Ct. 99). As stated by the Court of Appeals for the Eighth Circuit, "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle him to relief." *Schaller Telephone Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736 (8th Cir.2002) (citing *Kohl v. Casson*, 5 F.3d 1141, 1148 (8th Cir.1993)).

A complaint should not be dismissed because the facts alleged do not support the legal theory relied upon. "[T]he court is under a duty to examine the complaint to determine if the allegations provide for relief under any possible theory." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 n.

40 (2d ed.1990). *See also Bonner v. Circuit Ct. of St. Louis*, 526 F.2d 1331, 1334 (8th Cir.1975) (citing *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir.1974)).

Furthermore, failure to cite the correct statute does not affect the merits of the claim asserted and is not a basis to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6). *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 45–46 (2d Cir.1997) (quoting *Albert v. Carovano*, 851 F.2d 561, 563 n. 1 (2d Cir.1988)(en banc)).

Reviewing Jones' complaint in light of the above stated principles, the Court finds that the allegations in the complaint are sufficient to support actions seeking a non-dischargeability determination pursuant to sections 523(a)(6) and 523(a)(4)[1] of the United States Bankruptcy Code.

### 11 U.S.C. § 523(a)(6)

#### Willful and Malicious Injury

■ Section 523(a)(6) of the Bankruptcy Code provides as follows: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity...." 11 U.S.C. § 523(a)(6) (2000).

■ This section is generally relied upon by creditors whose collateral was disposed of by a debtor who also fails to remit the proceeds from the sale of collateral to the creditor. *In re Lampi*, 152 B.R. 543, 545 (C.D.Ill.1993) (citing *In re Iaquinta*, 98 B.R. 919, 925 (Bankr.N.D.Ill.1989)); 4 Collier on Bankruptcy ¶ 523.12[1] (Alan N. Resnick & Henry J. Sommer, et al. eds, 15th ed. rev.2003). Nondischargeability

1. Under these facts, the cause of action available to Jones pursuant to section 523(a)(4) is embezzlement, which will be discussed more fully below. The Court recognizes that a cause of action for fraud or defalcation by a fiduciary under section 523(a)(4) has previously been dismissed in this case.

will be determined only if the debtor's actions are both willful and malicious. *In re Long,* 774 F.2d 875, 882 (8th Cir.1985).

The Debtor argues in this case that it was Ford Motor Credit's property, not the property of Jones, that was allegedly injured when the sale proceeds were converted by the Debtor. The argument, however, ignores the provisions of 11 U.S.C. § 509 and the law of equitable subrogation in general. Section 509 provides as follows:

> (a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment
>
> . . .
>
> (c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

 On the topic of subrogation, this Court has stated previously that:

> Subrogation arises where a party having a liability pays a debt of a party who is primarily liable on the debt and who, in equity, should pay. *In re Bugos,* 760 F.2d 731, 733 (7th Cir.1984); *In re Glade Springs, Inc.,* 47 B.R. 780, 784 (Bankr.E.D.Tenn.1985), *aff'd sub. nom. Chemical Bank v. Craig (In re Glade Springs, Inc.),* 826 F.2d 440 (6th Cir. 1987). Subrogation entitles the party

paying the debt to exercise all rights and remedies, which the creditor possessed against the party who should have paid the debt. *American Surety Co. v. Bethlehem Nat'l Bank,* 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241 (1941); *Capital Nat'l Bank of Tampa v. Hutchinson,* 435 F.2d 46, 52 (5th Cir. 1970). The classic example of an entity possessing a right of subrogation would be a surety, a guarantor or an endorser. See *Bank of America Nat'l Trust & Savings Ass'n v. Kaiser Steel Corp. (In re Kaiser Steel Corp.),* 89 B.R. 150, 151 (Bankr.D.Colo.1988); *In re Tygrett,* 72 B.R. 129, 130 (Bankr.C.D.Ill.1987). Subrogation is an equitable remedy designed to prevent unjust enrichment.

*In re Russell,* 101 B.R. 62, 64 (Bankr. W.D.Ark.1989). *See also In re Jones Truck Lines, Inc.,* 196 B.R. 123 (Bankr. W.D.Ark.1996) (finding that guarantor who paid debtor's debt to creditor stood in shoes of creditor as to creditor's prepetition claim), *aff'd,* 133 F.3d 922, 1997 WL 780042 (8th Cir.1997).

Jones' claim against Hall is contingent upon Jones being forced to pay Ford Motor Credit the debt incurred by J & H, Inc.[2] on account of Hall's alleged misconduct. Thus, Jones has the same rights as Ford Motor Credit to object to the dischargeability of his contingent claim. A contingent claim is an allowable claim in bankruptcy. 11 U.S.C. § 101(5) (2000) (providing that a " 'claim' means—right to payment, whether or not such right is . . . contingent. . . .").

### 11 U.S.C. § 523(a)(4)

### Embezzlement

 The Bankruptcy Code provides that a debt is not discharged if incurred by

---

**2.** See *In re Speers,* 244 B.R. 142, 146 (Bankr. E.D.Ark.2000) (stating that, under section 523, the fact that the corporation committed

conversion is not an available defense to an individual who controlled the corporation).

"fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny...." 11 U.S.C. § 523(a)(4) (2000). Hall's alleged conversion of the proceeds from the sale of Ford Motor Credit's collateral constitutes embezzlement. *See, e.g., In re Johann,* 125 B.R. 679, 681–82 (Bankr.M.D.Fla.1991) (opining that individual's conversion of corporate funds for personal use was embezzlement within 523(a)(4)); *In re Tarrant,* 84 B.R. 831, 833 (Bankr.M.D.Fla.1988) (ruling debtor's conversion of collateral was also embezzlement); *In re Hoffman,* 70 B.R. 155, 163 (Bankr.W.D.Ark.1986)(stating debtor's conversion of Bank's collateral was embezzlement).

 Proving embezzlement does not require proof of the existence of a fiduciary relationship. *In re Wada,* 210 B.R. 572, 576 (9th Cir. BAP 1997) (citing *Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton),* 942 F.2d 551, 555 (9th Cir.1991) (citing *In re Shuler,* 21 B.R. 643, 644 (Bankr.D.Idaho 1982))); *In re Talcott,* 29 B.R. 874, 878 (Bankr.D.Kan. 1983). In the context of section 523(a)(4), proof of embezzlement requires the establishment of three elements: (1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than that for which it was entrusted; and (3) circumstances indicating fraud. *In re Hoffman,* 70 B.R. at 162.

Many courts hold that a debtor commits an embezzlement under section 523(a)(4) when the debtor sells mortgaged property and fails to remit the proceeds to a properly perfected, secured creditor or consignor. *See, e.g., In re Blanton,* 149 B.R. 393, 394–95 (Bankr.E.D.Va.1992) (sale of consigned automobiles and misappropriation of proceeds constituted embezzlement); *In re Rebhan,* 45 B.R. 609, 614 (Bankr.S.D.Fla. 1985) (sale of vehicles subject to floor plan

agreement with creditor and misappropriation of proceeds was embezzlement), *aff'd sub nom. Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257 (11th Cir.1988); *In re Freeman,* 30 B.R. 704, 708 (Bankr.W.D.La. 1983) (sale of vehicles subject to floor plan agreement ruled to be embezzlement); *In re Beasley,* 62 B.R. 653, 655 (Bankr. W.D.Mo.1986) (sale of grain subject to a perfected security interest constituted embezzlement); *In re Routson,* 160 B.R. 595, 611 (Bankr.D.Minn.1993) (debtor's sale of vehicles subject to floor plan agreement with creditor was embezzlement); *In re Marinko,* 148 B.R. 846, 850–51 (Bankr. N.D.Ohio 1992) (sale of floor plan vehicles out of trust constituted embezzlement).

Therefore, the motion to dismiss as to the amended complaint is denied.

IT IS SO ORDERED.